**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **PATRICK RICK** § | |
| § | |
| v. § | A-13-CV-1080 LY |
| § | |
| **TRAVIS COUNTY, TEXAS** § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Travis County, Texas' Motion for Summary Judgment (Dkt. No. 22), Plaintiff Patrick Rick's Response (Dkt. No. 23), and Defendant's Reply (Dkt. No. 28). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.   GENERAL BACKGROUND**

In early 2012, Patrick Rick was hired by the Travis County Sheriff's Office, intending to work as a Corrections Officer. New hires begin as Corrections Officer Cadets. In order to graduate from cadet to officer, Rick and his compatriots had to complete a series of classes and physical fitness tests known as the Corrections Officers Basic Recruit Academy, or "COBRA." As part of physical fitness work, one day the cadets were instructed to do jumping jacks. Instead of doing the exercise, Rick began to run in place and clap his hands over his head. Rick's instructor ordered Rick to stop and asked what he was doing. Dkt. No. 22-10. Rick stated that he had difficulty with his ankles and jumping jacks caused him pain. *Id.* He also stated that he had difficulty completing

"burpees" and "mountain climbers." *Id.*[1] Rick was instructed to provide the County with a memo detailing his injuries. In it Rick stated that:

> Constant and repetitive impact and motion causes both of my knees and ankles to go numb and produce a throbbing pain. An exercise like 'Jumping Jacks' and other types that require bending and/or impacting of my ankles and knees can only be done for short periods of time.

Dkt. No. 23-18 at 2. Rick also completed an "Employee's Statement (job related injury)" form on which he stated that his disability stemmed from injuries sustained while serving in the U.S. Army. Dkt. No. 23-17. Indeed, between the time he was hired as a cadet and the jumping jacks incident Rick had been diagnosed by a Department of Veterans Affairs doctor with knee and ankle strain in both legs, and given an impairment rating of 40%–10% for each ankle and knee. Dkt. No. 23-22.

In response to these notices, the County removed Rick from the COBRA class and asked him to have a doctor complete a Work Capacity Form, detailing any restrictions Rick may have. The doctor completed and signed the form, releasing Rick to full duty with no restrictions on his physical activity. Dkt. No. 23-16. Rick then met with Lieutenant Samuel Poole and Sergeant Jackson Lee Jones, who asked Rick if, in light of his medical clearance, he could do jumping jacks. He indicated that he could not. Dkt. No. 22-10 at 2. Poole wrote a memo documenting this, and passed it up the chain of command. On February 27, 2013 Rick was terminated from the program. Dkt. No. 22-12.

After filing a charge and receiving a right to sue letter from the EEOC, Rick filed this action, alleging violations of Title I of the Americans with Disabilities Act, the Texas Commission on

---

[1] A "burpee" is an exercise in which a person starts from a standing position, then squats with their hands next to their feet, then jumps their feet behind them to place them in a "push up" position, and then reverses the process to return to the standing position. A "mountain climber" has the person start from a "push up" position and then bring one leg forward at a time, with the knee close to the chest, repeating for several repetitions.

Human Rights Act, and Chapter 504 of the Rehabilitation Act. The County urges the Court to grant summary judgment in its favor, arguing that Rick was not a "qualified individual with a disability" because he could not perform the essential functions of the Corrections Officer position; and in the alternative, that Rick failed to engage in good faith in the "interactive process" of determining a reasonable accommodation for his disability.

## II.  STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to

defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III. ANALYSIS

In order to survive a motion for summary judgment a plaintiff bringing claims under the ADA must establish a *prima facie* case of discrimination. In cases such as this, where a Plaintiff only presents circumstantial evidence to show the alleged unlawful discrimination under the ADA, Courts apply the *McDonnell Douglas* burden-shifting analysis to the claim. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir.2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, a plaintiff must first make a *prima facie* case of discrimination under the ADA by establishing the following: (1) she suffers from a disability; (2) she is qualified for the job despite the disability; (3) she was subjected to an adverse employment action

4

due to her disability; and (4) she was treated less favorably than non-disabled employees. *Id.* at 279–80. Once the plaintiff makes this *prima facie* showing, the burden then shifts to the employer to articulate a "legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. Once the employer articulates such a reason, the burden shifts back to the plaintiff, to establish by a preponderance of the evidence that the articulated reason was merely "a pretext for unlawful discrimination." *Id.* (citation omitted). The County's motion raises only two issues: (1) the County contends that Rick was not a "qualified individual with a disability," and thus cannot make out a *prima facie* case; and (2) it contends that he failed to participate in the "interactive process" required by the ADA and its implementing regulations.

      A.      **Is Rick a "qualified individual?"**

A "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the position" in question. 42 U.S.C. § 12111(8). An essential function bears "more than a marginal relationship" to the employee's job. *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993), *holding modified on other grounds as discussed in Kapche v. City of San Antonio*, 204 F.3d 493 (5th Cir. 2002) (per curiam). In determining whether a function is essential

> consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). However, the ADA's Interpretive Guidance clarifies that a task's inclusion in a written job description does not end the inquiry; what matters is

> whether the employer *actually requires* employees in the position to perform the functions that the employer asserts are essential . . . . For example, an employer may

5

> state that typing is an essential function of a position. If, in fact, the employer has never required an employee in that particular position to type, this will be evidence that typing is not actually an essential function of the position. If the individual who holds the position is actually required to perform the function the employer asserts is an essential function, the inquiry will then center around whether removing the function would fundamentally alter that position.

Interpretive Guidance on Title I of the American with Disabilities Act, 29 C.F.R. pt 1630, app. § 1630.2(n) (emphasis added).

Travis County contends that Rick cannot demonstrate a *prima facie* case of discrimination because he cannot satisfy the second element of the analysis, as his inability to complete the exercises during COBRA demonstrate that he is not qualified to be a Corrections Officer. The County argues that jumping jacks, burpees, and mountain climbers are "essential functions" of a Corrections Officer's job. Because Rick cannot complete these exercises, it contends, he is not a "qualified individual with a disability" under the ADA. In support of this argument, the County points to the Job Descriptions for both Corrections Officers and Cadets, which state that it is essential that an employee be able to "intervene[ ] and resolve[ ] crisis situations such as fights and medical emergencies" and "carry out transportation and court security duties." Dkt. No. 22-4; 22-15. To that end, though not labeled "essential," employees must be capable of:

> Standing, sitting, kneeling, stooping, lifting, bending, climbing, twisting upper body, walking, running, driving, carrying . . . tak[ing] physical control of another person . . . [and employees] must meet fitness-for duty requirements.

*Id.* Further, the letter the County sent to Rick hiring him as a Cadet Corrections Officer stated that "all new Cadet Corrections Officers will be placed on a 12-month probationary period" during which cadets will "be required to successfully complete the Corrections Officers Basic Recruit Academy (COBRA) Course." Dkt. No. 22-7. The COBRA release form listed the physical activities that a

6

cadet is required to perform. Dkt. No. 22-6. It does not list jumping jacks, burpees, or mountain climbers by name. Instead, it lists more broadly "calisthenics" and "aerobic and anaerobic activities." *Id*. The release further states that cadets "must be able to have *repetitive movements* from hand and foot such as simple grasping, fine manipulation, pushing and pulling and foot control." *Id.* (emphasis added).

Of course, once they graduate from the Academy, Corrections Officers do not spend their days doing set after set of burpees—or jumping jacks, or mountain climbers. Instead, the County argues, these exercises are a proxy for the actual essential functions of a corrections officer. According to the testimony of Capt. Lisa Brown of the Sheriff's Office, those functions routinely include, for example, restraining an unruly inmate, taking him to the ground, and rapidly standing back up. Dkt. No. 22-3. "Quickly standing up from a ground exercise, as one would do from a burpie [*sic*], is a good test of a cadet's ability to stand back up after a take down of a prisoner." *Id.* at ¶ 7. Officers also frequently have to respond to emergency calls by running "on concrete floors and steps to the site of the occurrence." *Id.* at ¶ 4. If an officer is too pained to then provide assistance he "endangers his own safety as well as the safety of others." *Id.* Thus, "a cadet's ability to successfully complete certain high impact COBRA exercises"—including jumping jacks, mountain climbers and burpees—"is a good indicator of whether he will be able to perform his job as a corrections officer." *Id.* at ¶ 7.

In response, Rick argues that jumping jacks, burpees, and mountain climbers are not essential functions of either a Corrections Officer Cadet or a Corrections Officer. As the County readily admits, neither Cadets nor Officers do these specific exercises on the job. Dkt. No. 23-3 (Poole Depo.) at 39-41. Neither the Corrections Officer Job Description nor the COBRA medical release

list these specific exercises.  Instead they fall under the general terms "repetitive movements," "calisthenics" and "aerobic and anaerobic activities." Dkt. No. 22-6.  Moreover, Rick notes, he successfully completed other physical fitness requirements, which he suggests are better proxies for the essential functions of a Corrections Officer.  These include the Job Specific Test, or "JST," an obstacle course consisting of a 200 yard run, followed by hurdles, a balance beam, a dummy drag, "serpentine moving," a sandpit, heavy bags, a low crawl, and a chain link fence. Dkt. No. 23-21.  Rick completed the course with a time near the average for his class.  *Id.*  Training Academy staff testified that the JST is "very indicative of what a corrections officer may very well find themselves in a position to have to deal with." Dkt. No. 23-5 at 6.  This extended to "every part of the JST." *Id.*

Indeed, Rick has produced evidence that the County considers the JST to be perhaps the best proxy for the essential functions of a Corrections Officer.  The Lieutenant in charge of the training facility during Rick's time there testified that over the "past five years" he and "multiple instructors" evaluated the JST to ensure that each obstacle was aligned with the job requirements of a corrections officer. Dkt. No. 23-3 at 26-27.  They would "look at an obstacle and find somewhere in either job field corrections officer or peace officer where that would be applicable." *Id.* (*sic*).  He testified that the only area the JST did not sufficiently address was an officer's "mental stress." *Id.*  Rick also completed the Coopers Fitness Test, which included push-ups, sit-ups, a 300 meter sprint, and a 1.5 mile run. Dkt. No. 23-9.  Notably, neither the JST nor the Coopers Test include jumping jacks, burpees, or mountain climbers. Dkt. No. 20-5 at 19.  Rick argues that if his disability made him incapable of performing the essential functions of the Corrections Officer position, he would not have been able to successfully complete the JST or Cooper's Tests.  His inability to complete

jumping jacks, burpees, and mountain climbers—all non-essential functions, he urges—did not disqualify him from the job.

It is clear that Rick was unable to perform jumping jacks, burpees, and mountain climbers for a sustained period of time, as his COBRA supervisors instructed. If these specific exercises, taken alone, were "essential functions" that the County could not modify to accommodate Rick, then summary judgment in the County's favor would be warranted. However, there is clearly a genuine issue of material fact regarding whether jumping jacks, burpees, and mountain climbers, taken alone, are essential functions of the Corrections Officer job. It simply is not clear whether these three exercises as practiced during COBRA were an accurate proxy for the true essential functions of the job, and whether Rick's failure to complete them, while passing the other physical fitness requirements, and in particular, the Job Specific Test, rendered him unqualified for the position. Accordingly, summary judgment is not warranted on this point.

**B.      Did Rick fail to participate in the "interactive process"**

The County next urges the court to grant summary judgment because Rick failed to participate in the "interactive process" of determining a reasonable accommodation, as required by the ADA. Faced with a qualified individual with a disability, employers are obligated to "make reasonable accommodation to such individual's physical or mental impairments." 29 C.F.R. § 1630.9(b). Reasonable accommodations include, but are not limited to, "job restructuring, part-time or modified work schedules, reassignment to a vacant position" and "appropriate adjustment or modifications of examinations, training materials or policies." 42 U.S.C. § 12111(9). A "reasonable accommodation" is not necessarily "the employee's preferred accommodation." *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing *Hendrick v. Western*

9

*Reserve Care System*, 355 F.3d 555, 457 (6th Cir. 2004)). Instead, the accommodation need only "meet the job-related needs of the individual being accommodated." *Id.* (quoting 29 C.F.R. pt. 1630, App., § 1630.9). The employer has the final say, and is free to "choose the less expensive accommodation or the accommodation that is easier for it to provide." *Id*.

Employees and employers "should engage in flexible, interactive discussions to determine the appropriate accommodation." *E.E.O.C.*, *supra.,* at 471. The "responsibility for the interactive process is shared." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). "When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Id.* By the same token, if the process breaks down because of an employee's action, "an employer cannot be found to have violated the ADA." *Id.*

Each party to this suit alleges that the other failed to act in good faith during the "interactive process," causing it to break down and ultimately fail. In particular, the County notes that Rick refused to accept, or even fully investigate, a less physically demanding position within the Sheriff's Office–specifically, Security Coordinator. Dkt. No. 22-2 at 9-10; Dkt. No. 22-17 at 6. Rick stated that he did not want to apply for the position because it did not carry as much opportunity for promotion as the Corrections Officer position. Dkt. No. 22-17 at 8-9. The County, holding firm to its position that jumping jacks, burpees, and mountain climbers are essential functions of Corrections Officers, argues that Rick offered no alternative accommodations of his disability. Dkt. No. 22 at 19-20. Rick, unsurprisingly, sees things differently. He argues that this whole episode began when he offered an accommodation: namely, running in place and clapping his hands above his head instead of doing jumping jacks. Dkt. No. 23 at 16.

Rick concedes that the County faced a contradiction when he returned with a doctor's full medical release, but still claimed he could not do jumping jacks. But, he notes, the Work Capacity Form did not specifically mention jumping jacks, burpees, and mountain climbers, instead listing general athletic movements such as running, bending, crawling and squatting. He argues that if the County believed jumping jacks, burpees, and mountain climbers to be essential functions of the job, they had a duty to follow up with the doctor—not the untrained Rick—to determine whether he was capable of performing them. It did not, and instead, Rick argues, the County terminated his employment because it was concerned he had an underlying condition, not because he had refused accommodation.

Neither argument is particularly persuasive. As noted, Rick offered the accommodation of running in place, an exercise that likely would have produced nearly the same physical fitness results as jumping jacks. Rick's contention that the County had a duty to follow up and resolve the contradiction between his Work Capacity Form and inability to do jumping jacks would require the Court to find that his Work Capacity Form was ambiguous: it was not. Regardless, after reviewing the evidence, it is not clear which party, if either, was the cause of a breakdown in the "interactive process." This genuine issue of material fact precludes summary judgment at this time as well.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** Defendant Travis County, Texas' Motion for Summary Judgment (Dkt. No. 22).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 30th day of March, 2015.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE